# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

VALET LIVING, LLC,

     Plaintiff,

v.

    CASE NO. 8:21-CV-00388-VMC-AEP

MARCUS SANCHEZ and
ALLY WASTE SERVICES, LLC,

     Defendants.

_____/

## VERIFIED FIRST AMENDED COMPLAINT

Plaintiff, Valet Living, LLC ("Valet Living"), through counsel, files its Verified First Amended Complaint in this action and states as follows:

## PARTIES, JURISDICTION, AND VENUE

1.    This is an action for damages and injunctive relief exceeding $75,000, exclusive of interest, court costs, and attorneys' fees.

2.    Valet Living is a Delaware Company with a principal place of business in Tampa, Florida.

3.    Valet Living's sole member is Valet Waste Holdings, Inc., a Delaware corporation with a principal place of business in Tampa, Florida.

4.    Ally Waste Services, LLC ("Ally"), is a Corporation authorized to do business in the state of Florida with its principal place of business in Mesa, Arizona.

5.      Marcus Sanchez ("Sanchez") is an individual residing and working in Texas.

6.      Pursuant to 28 U.S.C. §1331, this Court has original jurisdiction to hear this case.

7.      Venue is proper in this Court pursuant to 28 U.S.C. §1392 and 28 U.S.C. §89 because, as noted below, Mr. Sanchez agreed and waived any objections to jurisdiction in any state and federal court located in Hillsborough County, Florida. Additionally, Ally has significant contacts in Florida and a portion of the claims at issue arose in Florida.  Finally, this Court also has diversity jurisdiction.

8.      Valet Living has satisfied all conditions precedent to the maintenance of this action.

## FACTUAL BACKGROUND

9.      Sanchez is a former Valet Living employee.

10.     At the time of his termination, Sanchez was employed as a Regional Manager.

11.     On or around March 12, 2018, Sanchez entered into a Confidentiality, Non-Competition, Non-Solicitation and Non-Acceptance Agreement with Valet Living (the "Sanchez Agreement").   A true and correct copy of the Sanchez Agreement is attached hereto as **Exhibit 1** and a screenshot of Mr. Sanchez's acknowledgement is attached as **Exhibit 2**.

2

12.     Among other provisions, paragraph 1 of the Sanchez Agreement protects confidential information by prohibiting Sanchez from disclosing the confidential information and requiring Sanchez to return all confidential information at the conclusion of his employment.   Specifically, paragraph 1 states as follows:

> <u>Confidentiality Covenant</u>.  Employee hereby agrees to keep in strict secrecy and confidence any and all information (whether in print, electronic format, on computer disks or tapes or in any other media, and whether internally generated or used by the Company under contract with any third party) that Employee obtains, is exposed to, develops or to which Employee had or has access as an employee of the Company, and which has not been publicly disclosed and is not a matter of common knowledge in the areas of business in which Company is engaged, including but not limited to customer lists, customer contact information, customer records and technical data (e.g., financial and personnel data), information regarding sales, costs, pricing, forms, contracts, proposals, marketing, contracts with third parties, plans for product or market or service developments or improvements, research records, computer programs, computer interfaces or interface mechanisms, processes, business and strategic plans, financial forecasts or any other information that derives economic value, either directly or indirectly, from being confidential to or trade secrets of the Company or its actual or potential customers (any such information being herein called the "Confidential Information"). Employee agrees that such Confidential Information is and shall remain the property of the Company, and, both during and after the term of Employee's employment, without the prior written consent of the Company:
>
> > (a)     Employee will not use or disclose or cause to be disclosed any Confidential Information to any third person, partnership, joint venture, company, corporation, other organization or other third party;
> >
> > (b)     Employee will not copy/forward or take from Company or any Company office for Employee's own use or the use of any third party or entity any document, paper, computer-generated media or other property of the Company containing any Confidential Information (unless necessary during its employment to conduct business on behalf of Company and approved in advance by Company); and

(c)     without request upon the termination of employment from Company, or at any time that the Company may so request, Employee will immediately deliver to the Company any document, paper, computer-generated media or other tangible and intangible property of the Company (and all copies of same) in his/her possession, custody or control that contains Confidential Information.

13.     The Sanchez Agreement also contains restrictive covenants that precludes Sanchez, for a period of two years, from working at a competing company following the conclusion of his employment; soliciting customers and prospective customers of Valet Living; and soliciting employees of Valet Living.  Specifically, paragraphs 2 and 3 of the Sanchez Agreement states as follows:

Noncompetition Covenant. I hereby agree that during the course of my relationship with the Company and for a period of twenty four (24) months after termination of that relationship, whether voluntary or involuntary, with or without cause, I will not, directly or indirectly, as employee, agent, independent contractor, consultant, partner, joint venturer or otherwise, within any state in the United States within which the Company has provided services, planned to provide services or offered to provide services to customers or prospective customers of Company within the twenty four (24) months preceding the date of the termination of my relationship with Company, to or on behalf of any entity providing services of the same nature or type as those provided by Company within the twenty four (24) month period preceding the termination of the relationship between myself and Company, provide or offer to provide products or services in competition with Company, including, without limitation, (a) participating as an officer, director, stockholder, member, employee, agent, independent contractor, consultant, representative or partner of, or having any direct or indirect financial interest (including, without limitation, the interest of a creditor) in, any such competitor or (b) assisting in any form or fashion any other individual or business entity, of whatever type or description, in providing any such competing products or services. The provisions of this section shall not apply to the ownership by me of less than five percent (5%) of any publicly traded corporation or other business entity solely as a passive investor and under circumstances in_which Company neither provides products or services nor assists anyone else to provide any products or

4

services to or on behalf of any such entity. I further agree that upon any violation of this section of this Agreement on or before the expiration of the term of the non-competition covenant, the period during which this restrictive covenant and any injunction arising therefrom shall run shall be extended equal to the number of days necessary from such improper, competitive conduct until such injunction is entered so that the Company obtains a full twenty four (24) months of noncompetition from Employee.

<u>Nonsolicitation and Nonacceptance Covenants.</u> I hereby agree, during my employment and for a period of twenty four (24) months after the termination of my employment, whether voluntary or involuntary, with or without cause, that I will refrain from and will not, directly or indirectly, as an independent contractor, employee, consultant, agent, partner, joint venturer, or otherwise do any of the following:

> (a)     solicit or counsel any third person, partnership, joint venture, company, corporation, association or other organization that I know or reasonably should know is or was a customer of Company within the twenty-four month period preceding my termination, regardless of such person's or entity's location, to terminate any business relationship with Company and/or commence a similar business relationship with any other individual or business entity;

> (b)     solicit or counsel any third person, partnership, joint venture, company, corporation, association or other organization that I know or reasonably should know is or was a prospective customer of Company at the time of my employment to commence a business relationship with any other individual or business entity in a competing business or not to do business with the Company;

> (c)     accept, with or without solicitation, any business from any third person, partnership, joint venture, company, corporation, association or other organization that I know or reasonably should know is or was a customer of Company within the twenty-four (24) month period preceding the date of my termination from Company, regardless of such person's or entity's location; or

> (d)     solicit any of the employees, agents or independent contractors of Company, or any other third party for which Company acts under contract, regardless of such person's or

5

entity's location, to terminate any business relationship with Company or otherwise encourage or hire (or assist anyone else to hire) any such person to commence any relationship as employee, agent or independent contractor for any other entity or individual. I further agree that upon any violation of this section of this Agreement on or before the expiration of the term of the nonsolicitation and nonacceptance covenants, the period during which this restrictive covenant and any injunction arising therefrom shall run shall be extended equal to the number of days necessary from such improper, conduct until such injunction is entered so that the Company obtains a full twenty four (24) months of nonsolicitation and nonacceptance from Employee.

14.    Paragraph 10 of the Sanchez Agreement also provides for remedies and

relief in the event of a breach as follows:

Remedies Upon Breach/Attorneys' Fees.   Employee acknowledges that damages at law will be difficult, if not impossible, to measure accurately in the event that Employee violates the terms of any of the foregoing covenants set forth in this Agreement and that the Company would suffer substantial damage as a result of such violation. Accordingly, Employee agrees that upon a violation of any of the covenants in this Agreement, the Company will be entitled, at its option and in its sole discretion, upon application to a court of competent jurisdiction, to obtain injunctive relief to enforce the provisions of the Agreement, which injunctive relief shall be in addition to any other rights or remedies available at law or in equity to the Company. In addition, Employee will pay to the Company all of the costs and expenses incurred by the Company in its successful enforcement of any of the Covenants, including court costs and reasonable attorneys' fees and disbursements of counsel and paralegals (before trial, at trial, in any appellate proceedings and in any litigation to establish Company's entitlement or amount to attorneys' fees).

15.    On or about June 25, 2019, Sanchez's employment with Valet Living

ceased.

16.    Sanchez's termination was the result of an internal investigation

regarding improper access of employee accounts from June 11, 2019 to June 25,

2019 and taking of confidential information ("Hacking Incident"). After a thorough investigation, it was determined that Sanchez was responsible for the Hacking Incident and downloading of confidential information.

17.     Following his departure, based on information and belief, on July 3, 2019, Sanchez sent confidential information to one of Plaintiff's employees through use of email address: screwvaletliving@protonmail.com.

18.     Sanchez's access to confidential and personal information by hacking into employee accounts is currently the subject of investigation by the San Antonio Police Department.

19.     Based on information and belief, Sanchez also improperly and fraudulently used Plaintiff's corporate credit card totaling no less than $1,579.04 in improper charges. This incident is also under investigation by the San Antonio Police Department and District Attorney.

20.     Shortly after his departure from Valet Living, Sanchez began working with Valet Living's direct competitor, Ally.

21.     Based on information and belief, after leaving his employment, Sanchez used Valet Living's confidential customer information to solicit Valet Living's customers.

22.     On August 19, 2019, Valet Living issued cease and desist correspondence to Sanchez regarding his impermissible access of confidential

customer information in violation of the confidentiality, non-competition, non-solicitation and non-acceptance provisions contained in the Sanchez Agreement. The cease and desist letter is attached hereto as **Exhibit 3**. On October 8, 2020, after learning of Sanchez's employment with Ally, Valet Living also issued similar correspondence to Ally informing the company that it was employing Sanchez in violation of non-competition, non-solicitation and non-acceptance provisions of the Sanchez Agreement ("Ally Demand Letter"). A true and correct copy of the Ally Demand Letter is attached hereto as **Exhibit 4**.

23. As of the filing of this suit, Ally has refused to terminate its employment relationship with Sanchez and Sanchez has refused to cease violation of the Agreement. As a result, Defendants have caused Valet Living to suffer damages by Ally's continued employment relationship with Sanchez in violation of the non-competition, non-solicitation and non-acceptance provisions and Sanchez's continued breach of the Agreement.

24. On or around June 18, 2019, Valet Living learned that Sanchez had improperly and impermissibly used his company credit card for personal or other unauthorized expenses.

25. As a result of Ally's and Sanchez's unlawful actions, Valet Living has experienced various damages, including the value of the requested injunctive relief.

7292632v.1

In addition, Sanchez has unjustly enriched himself at Valet Living's expense and Valet Living has been forced to incur legal expenses to enforce its rights.

26.    As a result of Ally's and Sanchez's unlawful actions, Valet Living was required to hire the law firm of Constangy, Brooks, Smith & Prophete, LLP and is obligated to pay its lawyers a reasonable fee for their services.

## <u>COUNT I</u>
### (TORTIOUS INTERFERENCE WITH BREACHED CONTRACT AGAINST ALLY)

27.    Valet Living realleges and incorporates by reference paragraphs 1 through 25 above as if set forth fully herein.

28.    This is an action against Ally for damages as a result of its tortious interference with the Sanchez Agreement, referred to as the "Breached Agreement," and which contains non-competition, non-solicitation and non-acceptance provisions that have been breached by Sanchez at the direction of Ally.

29.    Valet Living has established contractual and otherwise advantageous business relationships with its customers, and has taken reasonable and lawful steps to protect those relationships, including but not limited to, requiring certain employees to enter into agreements containing specific non-competition, non-solicitation and non-acceptance provisions.

30.    Ally knew or should have known of the Breached Agreement between Valet Living and Sanchez.  Despite this knowledge, Ally intentionally and

knowingly interfered with Valet Living's business and contractual relations with its customers and employees.

31.     Ally has inducted Sanchez to breach the Breached Agreement with Valet Living by initially employing, and continuing to employ Sanchez.

32.     Each day that Sanchez continues to operate on behalf of Ally, in violation of the provisions in the Breached Agreement, with Ally's knowledge of the same, constitutes a separate breach of the Breached Agreement.

33.     As a direct and proximate cause of Ally's actions, Valet Living has been harmed, and will continue to be harmed during the pendency of this action absent some form of prejudgment relief, as a result of Ally's knowing and intentional tortious interference with the Breached Agreement.

**WHEREFORE**, Valet Living respectfully requests that this Court enter judgment against Ally for its tortious interference with the contractual relationship with Sanchez, involving the restrictive covenants, for actual and compensatory damages, punitive damages, pre- and post-judgment interest, court costs, attorneys' fees and costs pursuant to applicable law pursuant to the "Wrongful Act Doctrine," and such other and further relief as is just and proper.

## COUNT II
## (BREACH OF CONTRACT – SANCHEZ)

34.     Valet Living realleges and incorporates by references paragraphs 1 through 25 above as if set forth fully herein.

10

35.     This is an action against Sanchez for Breach of the Sanchez Agreement.

36.     Sanchez breached the confidentiality provisions of the Sanchez Agreement by wrongfully taking, retaining, and utilizing Valet Living's confidential customer information and using it in connection with his new employment position with Ally after his employment with Valet Living ceased.

37.     As a result of Sanchez's breach of the Sanchez Agreement, Valet Living has been damaged.

**WHEREFORE**, Valet Living respectfully requests that this Court enter judgment against Sanchez for: (1) temporary and permanent injunctive relief requiring Sanchez and all persons or entities in active concert with him to return, disgorge and cease using all confidential, proprietary, professional and/or trade secret information of Valet Living in his possession, custody or control; (2) compensatory damages, pre- and post-judgment interest, attorneys' fees and costs; and (3) such other and further relief as may be just and proper.

## COUNT III
### (MISAPPROPRIATION OF TRADE SECRETS UNDER FLORIDA STATUTE §688.001 – ALLY AND SANCHEZ)

38.     Valet Living realleges and incorporates by reference paragraphs 1 through 25 above as if set forth fully herein.

39.     This is an action against Ally and Sanchez for misappropriation of Valet Living's trade secrets.

11

40.     Valet Living's customer information, including customer contact information and confidential information, constitutes a trade secret under Florida law.

41.     Specifically, Valet Living's information is not generally known to third parties and Valet Living takes reasonable precautions to maintain the secrecy of this information, such as the agreements attached hereto as Exhibits 1 and 2.

42.     Ally and Sanchez misappropriated Valet Living's confidential customer information, including customer contact information.

43.     Ally and Sanchez willfully and maliciously misappropriated Valet Living's trade secrets in an effort to steal Valet Living's customers and convert them to customers of Ally.

44.     After their employment with Valet Living and Sanchez used Valet Living's trade secret information to convert Valet Living's customers and the profits associated with said customers for their personal use and use of their new employer, Ally.

45.     Additionally, Sanchez's actions related to the Hacking Incident and access of employee accounts, and taking of confidential information, has resulted in damages to the Plaintiff, including significant cost to investigate and remediate the incident.

7292632v.1

46.     As a result of Ally's and Sanchez's willful and malicious misappropriation of Valet Living's trade secrets, Valet Living has been damaged.

**WHEREFORE**, Valet Living respectfully requests that this Court enter judgment against Ally and Sanchez for: (1) temporary and permanent injunctive relief requiring Ally and Sanchez, and all persons or entities in active concert with them to return, disgorge and cease using all trade secret information of Valet Living in his possession, custody or control; (2) exemplary damages associated with their willful and malicious misappropriation of Valet Living's trade secrets; (3) compensatory damages in the form of Valet Living's lost profits and/or the amount by which the defendants have unjustly enriched themselves; (4) damages associated with the costs to investigate and remediate the Hacking Incident (5) attorneys' fees and costs; and (6) such other and further relief as may be just and proper.

## COUNT IV
### (TORTIOUS INTERFERENCE WITH ADVANTAGEOUS BUSINESS RELATIONSHIPS – ALLY AND SANCHEZ)

47.     Valet Living realleges and incorporates by reference paragraphs 1 through 25 above as if set forth fully herein.

48.     This is an action against Ally and Sanchez for tortious interference with advantageous business relationships.

49.     Valet Living had an advantageous relationship with its customers.

50.     Ally and Sanchez knew of the advantageous business relationships between Valet Living and its customers.

51.     As described above, Ally and Sanchez (through Sanchez), using improper means and Valet Living's confidential information, intentionally and unjustifiably interfered with the business relationships between Valet Living and its customers.

52.     As a result of defendants' tortious interference, Valet Living has been damaged.

**WHEREFORE**, Valet Living respectfully requests that this Court enter judgment against Ally and Sanchez for compensatory damages, punitive damages, pre- and post-judgment interest, court costs and such other and further relief as is just and proper.

## <u>COUNT V</u>
### (BREACH OF CONTRACT – SANCHEZ)

53.     Valet Living realleges and incorporates by references paragraphs 1 through 25 above as if set forth fully herein.

54.     This is an action against Sanchez for Breach of contract.

55.     Sanchez breached the confidentiality, non-compete, and non-solicitation provisions of the Sanchez Agreement by: (1) wrongfully taking, retaining and/or utilizing Valet Living's confidential customer information; (2)

accepting employment with Ally, a company that directly competes with Valet Living; and (3) soliciting Valet Living's customers on behalf of Ally.

56.     The restrictive covenants contained in the Sanchez Agreement are reasonably necessary to protect Valet Living's legitimate business interests.

57.     Valet Living has a legitimate business interest in its confidential, proprietary, professional and/or trade secret information, its relationships with its customers and in the goodwill it developed with its clients.

58.     As a result of Sanchez's actions, Valet Living has been harmed.

**WHEREFORE**, Valet Living respectfully requests that this Court enter judgment against Sanchez for: (1) temporary and permanent injunctive relief prohibiting Sanchez from further violating the Sanchez Agreement; (2) compensatory damages associated with Sanchez's breaches of the Sanchez Agreement, together with pre- and post-judgment interest thereon; (3) attorneys' fees and costs; and (4) such other and further relief as may be just and proper.

<u>**COUNT VIII**</u>
**(SPECIFIC PERFORMANCE – SANCHEZ)**

59.     Valet Living realleges and incorporates by references paragraphs 1 through 25 above as if set forth fully herein.

60.     This is an action against Sanchez for specific performance as a result of a breach of the Sanchez Agreement and the non-competition provisions therein.

61.     Valet Living has been damaged, and will continue to be harmed during the pendency of this action absent some form of prejudgment relief, as a result of the defendants' failure to comply with the Sanchez Agreement, including by not limited to the non-competition provisions.  Money damages alone will not suffice to make Valet Living whole with respect to the significant business and financial investment that Valet Living has invested in reliance upon Sanchez's adherence to the Sanchez Agreement.

**WHEREFORE**, Valet Living requests judgment in its favor, awarding specific performance based upon the defendants' breach of the Sanchez Agreement, together with court costs and reasonable attorneys' fees.

## COUNT IX
## (DECLARATORY JUDGMENT – ALLY AND SANCHEZ)

62.     This is an action against the Defendants for declaratory relief pursuant to the "Declaratory Judgment Act," codified at 28 U.S.C. § 2201, as well as other applicable law, to determine the extent to which Defendants may continue to use unlawful means to achieve legal, business, and financial objectives that would be impossible but for the Sanchez's collective breach of Breached Agreement and Ally's employment of Sanchez with knowledge of the Breached Agreement.

63.     Valet Living reincorporates by reference the allegations contained in paragraphs 1 through 21 above as though fully set forth herein.

16

64.     The controversy (hereinafter referred to as the "Controversy") among the Parties focuses on whether or not Ally can continue to utilize Sanchez as an employee in direct violation of the Breached Agreement and whether Sanchez may continue to violate the Breached Agreement.  The Defendants apparently believe that they can do so, directly and indirectly, by remaining employed with Ally and continuing to solicit Valet Living's customers and use confidential information to attempt to obtain Valet Living's customers.  Defendants' conduct is collectively referred to as the "Actionable Misconduct."

65.     There is a *bona fide*, actual, present practical need for a declaration of the rights and duties of Valet Living and the Defendants with respect to this Controversy.

66.     The facts surrounding the Controversy are readily ascertainable and can be readily established.  Valet Living and the Defendants require timely adjudication of the Controversy as the status of current business, financial, and legal affairs continue to create an unacceptable situation for all involved.

67.     Valet Living seeks declaratory relief that the Actionable Misconduct by the Defendants is in breach of Sanchez's contractual relations with Valet Living, that the Defendants may not disclose and otherwise continue to misuse Valet Living's confidential information, that the Defendants may not continue to unfairly compete with Valet Living, to solicit customers, all in a manner prohibited under the Breached

Agreement, and that all of the foregoing is tortious and actionable by Valet Living against the Defendants.

68.     The rights of Valet Living and the Defendants (together, the "Parties"), and other interested parties, are dependent upon the adjudication of the Controversy.

69.     The Parties are all before this Court, and thus this is the correct forum in which to determine the rights of the Parties.

70.     A range of equitable considerations, including a weighing of the relative burdens on the Parties to this proceeding, and the equitable nature and authority of the Court, dictate that declaratory relief regarding the Controversy is appropriate at this time.

71.     It cannot be reasonably disputed that:

    a.     the Parties will experience a substantial continuing Controversy based upon the claims on the subject Actionable Misconduct;

    b.     the continuation of the Actionable Misconduct is assured in absence of judicial intervention;

    c.     the Actionable Misconduct is real and immediate, and not conjectural, hypothetical, contingent, or speculative; and

    d.     an actual controversy exists regarding the Actionable Misconduct.

72.     The Controversy presented in this Count is ripe.  The Parties are unsure as to their relative rights and remedies as to the Controversy. The Parties require this Court's declaratory relief in order to proceed.

**WHEREFORE**, Valet Living requests declaratory judgment regarding all aspects of the Controversy, in its favor and against the Defendants, consistent with all of the foregoing, and all other appropriate relief.

## COUNT X
## (TRESPASS TO CHATTEL UNDER FLORIDA STATUTE §810.09 – SANCHEZ)

73.     Valet Living reincorporates by reference the allegations contained in paragraphs 1 through 25 above as though fully set forth herein.

74.     This is an action against Sanchez for damages as a result of trespass to Valet Living's chattel, specifically its confidential customer information.

75.     At all times material hereto, Valet Living was the owners and possessors of the confidential customer information impermissibly access by Sanchez.

76.     In doing so, Sanchez's information impermissibly accessed by Sanchez at the direction of Ally.

77.     In doing so, Sanchez unlawfully interfered with Valet Living's property rights pursuant to Florida Statute § 810.09.

19

78.     As a proximate result of Sanchez's actions, Valet Living has been, and will continue to be, damaged, as it is deprived of the possession, enjoyment, and privacy of its customers' confidential information, constituting a trespass to chattel.

**WHEREFORE**, Valet Living respectfully requests that this Court enter judgment against Sanchez for: (1) temporary and permanent injunctive relief requiring Sanchez and all persons or entities in active concert with him to return, disgorge and cease using all confidential, proprietary, professional and/or trade secret information of Valet Living in his possession, custody or control; (2) compensatory damages, pre- and post-judgment interest, attorneys' fees and costs; and (3) such other and further relief as may be just and proper.

### COUNT XI
### (CONVERSION – SANCHEZ)

79.     Valet Living reincorporates by reference the allegations contained in paragraphs 1 through 25 above as though fully set forth herein.

80.     This is an action against Sanchez for damages as a result of conversion of Valet Living's chattel, specifically its confidential customer information and property purchased with Plaintiff's company credit card.

81.     At all times material hereto, Valet Living was the owners and possessor of the confidential customer information impermissibly accessed by Sanchez at the direction of Ally.

7292632v.1

82.     In doing so, Sanchez unlawfully interfered with Valet Living's property rights.

83.     At all times material hereto, Valet Living was the owner and possessor of a company credit card used fraudulently and without permission by Sanchez to make purchases totaling no less than $1,579.04.

84.     As a proximate result of Sanchez's actions, Valet Living has been, and will continue to be, damaged, as it is deprived of the possession, enjoyment, and privacy of its customers' confidential information, constituting conversion.

85.     As a proximate result of Sanchez's actions, Valet Living has been, and will continue to be, damaged, as it is deprived of the possession, enjoyment of money used to make purchases totaling no less than $1,579.04 on its company credit card, constituting conversion.

**WHEREFORE**, Valet Living respectfully requests that this Court enter judgment against Sanchez for: (1) temporary and permanent injunctive relief requiring Sanchez and all persons or entities in active concert with him to return, disgorge and cease using all confidential, proprietary, professional and/or trade secret information of Valet Living in his possession, custody or control; (2) compensatory damages, pre- and post-judgment interest, attorneys' fees and costs; (3) reimbursement of $1,579.04 for improper credit card purchases, and (4) such other and further relief as may be just and proper.

21

## COUNT XII
## (INJUNCTIVE RELIEF – ALLY AND SANCHEZ)

86.     This is an action for injunctive relief, to enjoin the Defendants from engaging in any continuation of the Actionable Misconduct or asserting or engaging in any conduct predicated upon the violation of the Non-Compete Provisions.

87.     Valet Living reincorporates by reference the allegations contained in paragraphs 1 through 21 and 58 above as though fully set forth herein.

88.     The relief sought in this Complaint is expressly contemplated pursuant to the language in the Breach Agreement as it pertains to Sanchez's conduct within this district, as agents and extensions of Ally, and under principals of *respondeat superior*.

89.     Ally is causing Sanchez to further breach the non-competition, non-solicitation and non-acceptance provisions in their new capacities at Ally.

90.     Valet Living is also entitled to injunctive relief with respect to continued disclosure of confidential information pursuant to the language in paragraph 10 of the Breached Agreement.

91.     Valet Living has invested substantially in the development of its customers, employees, confidential information, and other resources. Valet Living has further developed an enormous amount of goodwill with its customers in the Florida markets. Substantial relationships of this kind, associated with a particular

geographic location or marketing area are legitimate business interests justifying a restrictive covenant.

92.    It is long recognized that business relationship with customers and goodwill in the community as a legitimate business interest worthy of protection. *Akey v. Murphy*, 238 So. 2d 94, 96 (Fla. 1970) (goodwill is a reasonable interest sufficient to support a covenant not to compete and transfer of goodwill is implied in connection with the withdrawal of a partner from a medical business); *Karlin v. Weinberg*, 390 A. 2d 1161, 1166 (N.J. 1978) (employers have a legitimate interest in protection of Customer relationships); *Weber v. Tillman*, 913 P.2d 84, 92 (Kan. 1996) (recognizing that goodwill developed over years of business activities is a recognized protectable interest that former employee should not be allowed to misappropriate); *Cogley Clinic v. Martini*, 112 N.W.2d 679, 681-682 (Iowa 1962) (finding restriction reasonably justified to protect business activities' goodwill even where employer failed to show an exodus of Customers since the opening of competing business's new office); *Canfield v. Spear*, 254 N.t.2d 433 (HI. 1969) (restrictive covenant was reasonable and health clinic had protectable interest in patients even though clinic had not yet obtained a replacement dermatologist). Valet Living's business is no different for purposes of protecting it from the actions of the Defendants as the instigators of the breaches of the Breached Agreement by Sanchez.

7292632v.1

93.     In addition to Valet Living's legitimate interest in its customer base, human resources, and goodwill, Valet Living has a legitimate business interest in protecting the confidential information. Sanchez executed the Breached Agreement in favor of Valet Living as a condition to his employment.  Valet Living has a legitimate business interest in protecting its initial investment in the confidential information that is within Sanchez's business knowledge at this time.

94.     The heart of all enforceable covenants not to compete is the aim of preventing unfair competition or unjust enrichment at the employer's expense.  Valet Living also has a legitimate business interest in protecting its financial interests and other relationships that depend on the non-compete provisions among the employees.  Valet Living has a legitimate business interest in the continued success of its business activities, which is dependent upon the enforcement of the non-competition, non-solicitation and non-acceptance provisions among all of its present and applicable former employees.

95.     When Valet Living commits to its employees, these employees receive numerous benefits from Valet Living.  But without the protection of the Breached Agreement, Valet Living has no protection against its employees leaving once they have used Valet Living's resources to build their business activities.  Such an appropriation of Valet Living's assets is clearly unfair competition and justifies its restrictive covenant.  This is all the more obvious when one considers the magnitude

24

of Ally, which has participated in the fruits of the Sanchez's misconduct for its own benefit.

96.     The duration of the Breached Agreement is extremely reasonable given the length of time it may take Valet Living to reconstitute the team of employees to serve its customers. Furthermore, the duration of the Breached Agreement is a reasonable amount of time for Valet Living to attempt to retain its customer base using its existing employees, while at the same time introducing new employees to the community.

97.     As set out above, the damages Valet Living will suffer if the Breached Agreement are not enforced are incalculable and include intangible losses such as loss of goodwill and referral sources.  Furthermore, the effect of the failure to enforce the Breached Agreement is incalculable.  The damages stemming from the reach of the Breached Agreement do not provide Valet Living with an adequate remedy at law because a money judgment is not sufficient.

98.     Furthermore, the same reasons that justify an assumption of irreparable injury upon establishing an enforceable restrictive covenant normally make it clear that money damages, even if capable of being proved, cannot compensate an employer for all aspects of such a violation.  The loss of goodwill does not simply stem from the loss of a few of the customers or employees, but from the invasion of Valet Living's corporate privacy, and the convenient taking of referral source

information and confidential information that have required many years for Valet Living to develop.

99.    Ally, including through its employment of Sanchez, is now in direct competition with Valet Living and its remaining employees. As extensions of Ally and Sanchez have attempted to arrogate customers, confidential information, and other resources of Valet Living. Through Sanchez, Ally is soliciting the referral sources to transfer existing customers, confidential information, and other resources to Ally at the unfair expense of Valet Living.

100.    Valet Living depends upon its customers, confidential information, and other resources for the continued success of its business activities. Valet Living has longstanding relationships with its customers within this district and throughout Florida.  Valet Living is entitled to protect its relationships within the areas.

101.    As a result of the Actionable Misconduct, Valet Living has been harmed and believes itself to be at risk in business, financial, and legal terms unless judicial intervention is forthcoming.

102.    Unless the Actionable Misconduct ceases, Valet Living will continue to suffer irreparable harm.

103.    With respect to the Actionable Misconduct, Valet Living lacks an adequate remedy at law.

7292632v.1

104.    In particular, but without limitation, the Defendants should be enjoined from the following activities wherever prohibited:

a.      the Defendants must be enjoined from authorizing or directing Sanchez and Ally from using any Confidential Information derived from their tenure at Valet Living;

b.      the Defendants must be enjoined from acting, by or through Sanchez and Ally , to access records of Valet Living that constitute confidential information, including client lists and contact information, of Valet Living;

c.      the Defendants must be enjoined from competing with Valet Living, by or through Sanchez;

d.      the Defendants must be enjoined from soliciting Customers, by or through Sanchez;

e.      the Defendants must be enjoined from otherwise authorizing or directing breach of the Breached Agreement by Sanchez.

**WHEREFORE**, Valet Living requests injunctive relief regarding all of the Actionable Misconduct, in its favor and against the Defendants, consistent with all of the foregoing, and all other appropriate relief.

27

Respectfully submitted this 2nd day of March, 2021.

/s/     *Phillip J. Harris*

**PHILLIP J. HARRIS,** FBN:  0044107
pharris@constangy.com
**CONSTANGY, BROOKS, SMITH &
PROPHETE, LLP**
100 North Tampa Street, Suite 3350
Post Office Box 1840
Tampa, Florida  33601-1840
Telephone:  (813) 223-7166
Facsimile     (813) 223-2515
Service Email:    tampa@constangy.com
***Attorneys for Plaintiff***

7292632v.1

## VERIFICATION PAGE

**VALET LIVING, LLC**

Sign: _Lot Parker_

Print: _Laurie Ann Parker_

Title: _HR Director West_

STATE OF _Florida_
COUNTY OF _Hillsborough_

    I HEREBY CERTIFY that on this day before me, an officer duly authorized to administer oaths, personally appeared in the county and state aforesaid, the _Laurie Ann Parker_ of VALET LIVING LLC [X] who being personally known or [ ] having produced the following as identification _____ and after being sworn, says that the foregoing assertions in the attached Complaint are true and correct to the best of his/her own personal knowledge.

    Sworn to and subscribed before me this 2nd day of _March_ 2021.

_Jennifer Ann Graves_

Name typed/printed: _Jennifer Ann Graves_

Notary Public, State of _Florida_

My Notary Commission Seal:



JENNIFER ANN GRAVES
Commission # GG 932979
Expires November 19, 2023
Bonded Thru Troy Fain Insurance 800-385-7019